IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **RAGAN & MASSEY, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:09-cv-00039 |
| | § | |
| **VOLUNTARY PURCHASING** | § | |
| **GROUPS, INC., WADE BOWMAN,** | § | |
| **JIM BUNCH, CARL BRYAN, WAYNE** | § | |
| **HOLLAND, JOE SIEMER, and BWI** | § | |
| **COMPANIES, INC.,** | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**
<u>**DENYING DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) AS MOOT**
**AND GRANTING DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(2)**</u>

Pending before the court is "Defendants' Motion to Dismiss Under Rules 12(b)(6) and 12(b)(2)" (Dkt. # 19). Having considered Defendants' motion, Plaintiff's response, Defendants' reply, and the briefs in support, the court is of the opinion the motion to dismiss under Rule 12(b)(6) should be **DENIED AS MOOT**, and the motion to dismiss all claims against Defendant Joe Siemer for lack of personal jurisdiction under Rule 12(b)(2) should be **GRANTED**.

**I. BACKGROUND**

This is a case about a failed commercial relationship between the plaintiff Ragan & Massey and the defendant Voluntary Purchasing Groups ("VPG"). Ragan & Massey is a Louisiana corporation with its principal place of business in Ponchatoula, Louisiana. Pl.'s Second Am. Compl. ¶ 1. VPG is a Texas cooperative with its principal place of business in Bonham, Texas. *Id.* ¶ 2. VPG is in the business of manufacturing and distributing agricultural

products and chemicals. *Id.* at ¶ 11. Wade Bowman holds the offices of President and Chief Executive Officer of VPG and is a resident of Texas. *Id.* at ¶ 3. Carl Bryan is a member of the Board of Directors of VPG and holds the offices of Secretary and Treasurer of VPG and is domiciled in Texas. *Id.* at ¶ 4. Jim Bunch and Wayne Holland are also residents of Texas and members of the Board of Directors of VPG. *Id.* at ¶ 5–6. Joe Siemer is an individual domiciled in Missouri and is Chairman of the Board of Directors of VPG. *Id.* at 7. BWI Companies, Inc. ("BWI") is a Texas corporation with its principal place of business in Nash, Texas. *Id.*

According to the Plaintiff, VPG operates as a cooperative. *Id.* at ¶ 11. Wholesale and retail dealers of agricultural products and chemicals may become members of VPG through the purchase of common stock in the cooperative. *Id.* at ¶ 17. Stock ownership entitles shareholders to "preferred patronage rights"—that is VPG's shareholders are promised a preferred right to purchase products and chemicals manufactured, processed or distributed by VPG. *Id.* at ¶ 18. In addition, VPG shareholders and other persons that purchase VPG's products for resale ("contract-patrons") are entitled to receive patronage refunds. *Id.* at ¶ 21. These patronage refunds amount to the difference between the selling price and cost of VPG's products and serve to reduce the cost of VPG goods sold or distributed by VPG shareholders. *Id.* According to VPG's bylaws, neither the preferred patronage rights nor the patronage refunds are subject to termination. *Id.* at ¶ 22. Although there is only one class of common stock, VPG classifies its shareholders into three categories: (1) wholesale jobber; (2) retail dealer; or (3) retail farm dealer. *See id.* at ¶ 19.

Ragan & Massey's relationship with VPG began in early 1993 when VPG invited Ragan & Massey to become a wholesale jobber or distributor of VPG products. *Id.* at ¶ 24. In February

of 1993, VPG assigned Ragan & Massey a geographic marketing area that included portions of Louisiana, Mississippi, Alabama, Florida, and Arkansas for the distribution of VPG's products. *Id.* at ¶ 25. Ragan & Massey immediately began purchasing VPG products for sale and distribution to their customers. *Id.* In June of 1993, Ragan & Massey became a shareholder of VPG when it was issued common stock as a patronage refund. *Id.* at ¶ 26. From 1993 to August 2008 Ragan & Massey purchased and distributed VPG products in accordance with their agreement with VPG. *Id.* at ¶ 27–28. In August of 2008, however, VPG's director of sales and marketing notified Ragan & Massey that VPG was terminating their relationship. *Id.* at ¶ 29. Ragan & Massey asserts this termination was made without "any reason, cause or explanation." *Id.*

On January 27, 2009 Ragan & Massey filed this lawsuit alleging claims against VPG and Wade Bowman, Carl Bryan, Jim Bunch, Wayne Holland, and Joe Siemer in their capacity as VPG's officers and directors. In its original complaint, Plaintiff alleged claims for breach of contract, tortious interference with contract, tortious interference with business, wrongful expulsion from cooperative membership, fraud, unfair trade practices, shareholder oppression, violation of the law governing cooperatives, and deprivation of the right to inspect corporate records. *See* Orig. Compl. On February 27, 2009, Defendants filed "Defendants' Motion to Dismiss Under Rules 12(b)(6) and 12(b)(2)" (Dkt. 19). Plaintiff filed its First Amended Complaint on August 3, 2009 (Dkt. 39) and added BWI Companies, Inc. as a defendant. Then on September 3, 2009, Plaintiff filed a Second Amended Complaint (Dkt. 49) against all defendants. In its second amended complaint, Plaintiff seeks relief against VPG for breach of contract, wrongful expulsion from cooperative membership, fraud, negligent misrepresentation,

violation of the law governing cooperatives, and deprivation of the right to inspect corporate records. In addition, Plaintiff asserts claims against Bowman, Bunch, Bryan, Holland, and Siemer for tortious interference with contract, shareholder oppression, civil conspiracy, and unfair trade practices. Finally, Plaintiff asserts claims against BWI for shareholder oppression, tortious interference with contract, tortious interference with prospective business, civil conspiracy, and unfair trade practices.

## II. DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants' motion to dismiss under 12(b)(6) is directed to Plaintiff's original complaint. Because Plaintiffs have twice amended their complaint and Defendants have not filed a motion to dismiss responsive to the second amended complaint, Defendants' motion to dismiss under 12(b)(6) is moot and therefore **DENIED**.

## III. DEFENDANT JOE SIEMER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standard

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the state's long arm statute confers personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction is consistent with due process. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir.2008). To satisfy the requirements of due process, the plaintiff must demonstrate: (1) that the nonresident defendant established minimum contacts by "purposely avail[ing] himself of the benefits and protections of the forum state;" and (2) "the exercise of jurisdiction does not offend traditional notions of fair

play and substantial justice." *Id.* (internal quotations omitted).

Minimum contacts may be established through either specific or general jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001). General jurisdiction exists when a nonresident defendant's contacts with the forum state are unrelated to the cause of action but are "substantial, continuous, and systematic." *Johnston*, 523 F.3d at 609 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–19 (1984)). The "continuous and systematic" contacts test is difficult to satisfy and requires extensive contacts between the defendant and the forum. *Johnston*, 523 F.3d at 609. "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Id.* at 610 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007)).

If the defendant's contacts are less pervasive, a court may exercise specific jurisdiction in a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8. When specific jurisdiction is alleged, the minimum contacts inquiry focuses on the relationship among the defendant, the forum, and the litigation. *Id.* at 414. To exercise specific jurisdiction, the court must find: (1) the defendant purposefully availed himself of the privilege of conducting activities in the forum state; and (2) the cause of action arose out of or relates to such activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). Although "[i]t is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil," jurisdiction cannot be grounded in the unilateral activity of the plaintiff. *Bullion v. Gillsepie, M.D.*, 895 F.2d 213, 216 (5th Cir. 1990). Further, the Fifth Circuit has recognized that specific

personal jurisdiction is a claim-specific inquiry, holding "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

The plaintiff bears the burden of establishing the court's personal jurisdiction over a nonresident. *Johnston*, 523 F.3d at 609. When the jurisdictional issue is decided without an evidentiary hearing, the plaintiff need only present facts sufficient to establish a *prima facie* case of personal jurisdiction. *Id.* "Proof by a preponderance of the evidence is not required." *Id.* For the purpose of determining whether a *prima facie* case exists, the court must accept plaintiff's uncontroverted allegations in the complaint as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Bullion*, 895 F.2d at 217. "In considering a motion to dismiss for lack of personal jurisdiction a district court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quotations omitted).

Once the plaintiff has established minimum contacts, jurisdiction exists unless the defendant can make a compelling case that the exercise of jurisdiction offends traditional notions of fair play and substantial justice. *Johnson*, 523 F.3d at 615 (citing *Wien Air Alaska v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). In evaluating the fairness of exercising jurisdiction, the court examines: "(1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the shared interest of the several states." *Id.*

## B. Discussion & Analysis

In the present case, Defendant Joe Siemer argues the he is not subject to personal jurisdiction because his contacts with the forum are not sufficient to establish either general or specific jurisdiction. According to Siemer, this court lacks general jurisdiction because he does not live in Texas; he does not work in Texas; he owns no personal or real property in Texas; he maintains no bank accounts in Texas; he conducts no personal business in Texas; he has never entered into a contract in his individual capacity that was performable in whole or in part in Texas; he does not have a telephone listing in Texas; he has never paid taxes in Texas; and he does not have and is not required to have a registered agent for service of process in Texas. Additionally Siemer claims that his position as a director of VPG does not provide sufficient contacts for this court to exercise jurisdiction. Citing *Shaffer v. Heitner*, 433 U.S. 186 (1977), Siemer argues his status as a director of a Texas corporation alone cannot establish the requisite minimum contacts with Texas. Siemer further argues the fiduciary-shield doctrine prevents the exercise of personal jurisdiction over corporate officers when the nonresident's contacts with the forum were on behalf of the corporation. Finally, Siemer claims that the court lacks specific jurisdiction because he is not involved in any specific act or conduct that gives rise to any cause of action in Texas.

Plaintiff does not argue that Siemer had continuous contacts with Texas or that general jurisdiction exists in the present case. Instead, Plaintiff argues this court has specific jurisdiction over Siemer, because the Texas long-arm statute authorizes personal jurisdiction over a nonresident defendant who "does business" in Texas, which specifically includes committing a tort in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1) (Vernon 2008). Plaintiff

contends Siemer's contacts with Texas related to his business dealings as a director of VPG constitute purposeful availment. According to Plaintiff, Siemer routinely visits Texas to attend board meetings held at locations near the Dallas-Fort Worth International Airport. Specifically, Plaintiff alleges Siemer has attended twelve such meetings since 2004. Plaintiff also alleges that Siemer's long-time, ongoing relationship with VPG and its board of directors (all of whom are Texas residents) and his vested interest in the success or failure of VPG demonstrate that he sought to profit or benefit by availing himself of the privilege of doing business in Texas. Plaintiff further argues the fiduciary-shield doctrine does not apply in the present case because the doctrine does not apply to torts for which the officer may be held individually liable. In its second amended complaint, Plaintiff avers that Siemer engaged in tortious interference with contract, shareholder oppression, civil conspiracy, and unfair trade practices through his role as Chairman of the Board of Directors of VPG.

*1. General Jurisdiction*

Because Plaintiff does not argue for a finding of general jurisdiction and the court is satisfied that Siemer's individual contacts with Texas are not continuous and systematic, the court finds no basis for the exercise of general jurisdiction over Siemer. Plaintiff's only argument that could be construed to support the application of general jurisdiction is Plaintiff's assertion that the fiduciary-shield doctrine, asserted by Siemer as a defense to general jurisdiction, does not apply.

Under the fiduciary-shield doctrine, it is well established that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Stuart v.*

*Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). But, the protections of the fiduciary-shield doctrine are not absolute. The doctrine does not apply, for instance, when courts are willing to disregard the corporate entity on the theory that the individual is the alter ego of the corporation or parent. *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 n.7 (5th Cir. 2004); *Stuart*, 772 F.2d at 1197. Likewise, the fiduciary-shield doctrine does not bar jurisdiction when a defendant is being sued for his own tortious conduct, which had reasonably foreseeable consequences in Texas. *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 973 n.11 (5th Cir. 1984). In *Donovan*, the court explained that personal jurisdiction exists in spite of the fiduciary-shield doctrine "if there were allegations of specific acts [by the defendant] giving rise to jurisdiction." *Id.* (internal quotations omitted).

Plaintiff argues the doctrine does not apply in the present case because Siemer and VPG do not have an employer-employee relationship. Plaintiff cites no authority for the proposition that the fiduciary-shield doctrine is limited to corporate employees and the court can find none. Plaintiff also argues the fiduciary shield doctrine does not apply in the present case because Siemer engaged in a tort for which he may be held individually liable. Although the "intentional tort exception" to the fiduciary-shield doctrine is well supported in case law, Plaintiff has not alleged that any tortious activity occurred in Texas or was directed toward Texas residents. The only facts alleged with respect to Siemer's activities in Texas relate to his participation in VPG board meetings. Plaintiff does not allege that any tortious conduct occurred at these meetings. Moreover, the tortious conduct alleged is against Ragan & Massey, a Louisiana corporation with its principal place of business in Ponchatoula, Louisiana. Therefore, whatever the effects of Siemer's alleged tortious conduct, they are not directed at residents of the forum state. In short,

Plaintiff has failed to allege that Siemer engaged in tortious conduct that had reasonably foreseeable consequences in Texas. *See Donovan*, 747 F.2d at 973 n.11. As a result, the "intentional tort exception" to the fiduciary-shield doctrine does not apply to Siemer. Siemer's contacts with Texas on behalf of VPG cannot, therefore, be used to establish general jurisdiction over Siemer individually. Plaintiff has failed to establish a *prima facie* case of general jurisdiction over Siemer.

2. *Specific Jurisdiction*

Plaintiff also failed to meet its burden of establishing a *prima facie* case of specific jurisdiction. To do so, Plaintiff must show that Siemer not only purposefully availed himself of the forum, but also that Siemer's contacts with the forum relate to or give rise to the cause of action. *See Burger King Corp.*, 471 U.S. at 472. The underlying determination in evaluating jurisdiction is whether the defendant could reasonably expect to be haled into court in the forum state. *Id.* at 474. If a nonresident's alleged tortious "actions are expressly aimed at the forum state, and the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, the tortfeasor must reasonably anticipate being haled into court there to answer for its tortious actions." *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir. 1988) Plaintiff has not specified whether all of its claims arise out of the same contacts or whether they arise from separate contacts that require individual analysis. Therefore the court assumes Plaintiff intends that the same contacts support each of its claims against Siemer.

Plaintiff's only evidence of Siemer's contacts with the forum relate to his role as a member of the board of VPG. As evidence of purposeful availment, Plaintiff cites the minutes of VPG board meetings where Siemer was present in his capacity as member of the board. Plaintiff

directs the court to references of Siemer's presence at meetings held in Texas in May 2008, January 2008, March 2008, November 2007, May 2007, January 2007, October 2006, March 2006, February 2006, and February 2005. Pl.'s Opp'n to Defs.' Mot. to Dismiss Ex. A. These references establish that Siemer was present in Texas in his capacity as corporate director, but are not alone sufficient to establish purposeful availment. *See Shaffer v. Heitner*, 433 U.S. 186, 215 (1977) (accepting position as officer or director does not demonstrate personal availment). What is entirely missing from Plaintiff's evidence are any facts to show how Siemer's contacts with the forum relate to or give rise to the causes of action. Nothing before the court indicates that Siemer's allegedly tortious behavior occurred at or during VPG board meetings in Texas or that Siemer directed his tortious behavior toward residents of the state of Texas. Instead, Plaintiff by its own admission is a Louisiana Corporation engaged in the distribution of agricultural products in Louisiana, Missippi, Alabama, Florida, and Arkansas. Also, the court can find nothing to connect Siemer's attendance at VPG board meetings with the operative facts of the litigation. Without some evidence to connect Siemer's allegedly tortious acts to the forum, this court cannot exercise jurisdiction.

Plaintiff cites *Glencoe Capital Partners II, L.P. v. Gernsbacher*, 269 S.W.3d 157 (Tex. App.—Fort Worth 2008, no pet.), and *TravelJungle v. American Airlines, Inc.*, 212 S.W.3d 841 (Tex. App.—Fort Worth 2006, no pet.) to support its contention that Siemer's contacts with the forum are sufficient for this court to exercise jurisdiction. The court has carefully reviewed the discussion of personal jurisdiction in each case, but can find nothing to relieve Plaintiff of its obligation to present facts sufficient to establish a substantial connection between Siemer and the forum. According to the court in *Glencoe*: "purposeful availment alone will not support an

exercise of specific jurisdiction . . . purposeful availment has no jurisdictional relevance unless the defendant's liability arises from or relates to the forum contacts." 269 S.W.3d at 166. Plaintiff has not supplied the court with any evidence to connect its claims against Siemer for tortious interference with contract, shareholder oppression, civil conspiracy, and unfair trade practices with Texas. Accordingly, Plaintiff has failed to establish a *prima facie* case of specific jurisdiction over Siemer.

Because Plaintiff has not established the required minimum contacts, the court need not consider whether the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice.

### IV. CONCLUSION

For the reasons set out above, Defendants' Motion to Dismiss Under Rule 12(b)(6) is **DENIED AS MOOT** and Defendants' Motion to Dismiss Under Rule 12(b)(2) is **GRANTED**. All claims against Defendant Joe Siemer are hereby dismissed for lack of jurisdiction under Rule 12(b)(2).

IT IS SO ORDERED.

**SIGNED this the 28th day of September, 2009.**

_Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE